STEVEN R. YELVERTON v. KEMP FURNITURE INDUSTRIES, INC., AND EMPLOYMENT SECURITY COMMISSION OF NORTH CAROLINA

No. 808SC419

(Filed 17 March 1981)

Master and Servant § 108.1– misconduct connected with employee's work – no right to unemployment compensation benefits

Claimant's actions in threatening a fellow employee with bodily harm, leaving his assigned work area for the avowed purpose of going to another work area to harass a fellow employee, and picking up a wooden post in the course of an argument with the fellow employee were sufficient to constitute an intentional and substantial disregard of the employer's interest, and they thus constituted "misconduct connected with his work" within the meaning of G.S. 96-14 sufficient to disqualify him from receiving unemployment compensation benefits.

APPEAL by respondents, Kemp Furniture Industries, Inc. (employer) and the Employment Security Commission of North

Carolina (Commission) from *Rouse, Judge.* Judgment entered 24 December 1979 in Superior Court, WAYNE, County. Heard in the Court of Appeals 16 October 1980.

Claimant, a print operator employed by respondent employer, was discharged from employment following an incident in which he allegedly threatened to hit another employee with a wooden post. Subsequent to his discharge, claimant filed with respondent Commission for unemployment compensation benefits.

The Claims Adjudicator determined that claimant was not "discharged for misconduct connected with his work," G.S. 96-14(2) (Supp. 1979), and that he thus was not disqualified from receiving benefits. The Appeals Referee affirmed that decision. On appeal by the employer from that decision, the Commission vacated and remanded. After further hearing the Appeals Referee issued supporting findings and memoranda and again affirmed the decision of the Claims Adjudicator that claimant was not disqualified from receiving benefits. The employer again appealed to the Commission. The Commission concluded that claimant "was discharged from his employment ... for misconduct connected with his work" and was therefore disqualified from receiving benefits until he removed the disqualification by a method provided in G.S. 96-14(10).

Claimant appealed the Commission's decision to the superior court, which entered judgment, in pertinent part, as follows:

> Upon a careful examination of the entire record ... this Court concludes that the evidence ... does not support a finding or a conclusion that the claimant ... was discharged from his employment for misconduct connected with his work, and that the findings of fact ... do not support a conclusion that the claimant ... was discharged for misconduct connected with his work.

The respondents appeal from the court's judgment reversing the decision of the Commission, thereby holding claimant not to be disqualified, on account of misconduct connected with his work, from receiving unemployment compensation benefits.

*Robert S. Cahoon, for claimant appellee.*

*Johnson, Patterson, Dilthey and Clay, by Ronald C. Dilthey, for respondent-appellant Kemp Furniture Industries, Incorporated.*

*V. Henry Gransee, Jr., for respondent-appellant Employment Security Commission of North Carolina.*

WHICHARD, Judge.

The Commission made the following pertinent findings of fact:

2. The claimant worked on the employer's furniture assembly line in the print line department as a helper. The claimant worked from 4:45 p.m. until 6:15 a.m.

3. Approximately sixty feet away from the claimant's work station at the end of the furniture assembly line, Ricky Vick worked as the last man on the end of the line taking furniture off the line and then stacking the furniture.

4. Ricky Vick had worked in the print line department, but approximately two weeks prior to the claimant's last day of work had been transferred to the end of the assembly line. After Mr. Vick's transfer, the claimant began teasing Mr. Vick about being moved to the end of the furniture assembly line.

. . . .

6. On the claimant's last day at work, the claimant approached Mr. Vick and stated that he was going to get Mr. Vick fired from his job and thereafter the claimant threatened Mr. Vick with bodily harm.

. . . .

8. After the twelve o'clock break, the claimant, Mr. Vick, and [another employee] returned to their work stations. Shortly thereafter, the claimant stated to [the other employee] that he was going out and harass Mr. Vick some more. The claimant left his work area and did not return.

9. The claimant proceded to the tail end of the assembly line, and a co-worker heard the claimant and Mr. Vick arguing. The co-worker observed the claimant pick up a

wooden post from a truck cart which was used to transport various materials. The claimant then put the wooden post on the truck cart and the co-worker "heard a lick," looked around and saw the claimant fall to the floor. Another co-worker observed Mr. Vick holding a wooden post and thereafter observed Mr. Vick strike the claimant on the head with the wooden post.

10. Mr. Vick and the claimant were discharged from their employment for violation of an employer policy which states that employees who are involved in fights and use or threaten to use any kind of weapon will be discharged.

These findings of fact are supported by competent evidence in the record. Therefore, they are conclusive on appeal. G.S. 96-4(m); G.S. 96-15(i); *In re Thomas,* 281 N.C. 598, 189 S.E. 2d 245 (1972); *In re Abernathy,* 259 N.C. 190, 130 S.E. 2d 292 (1963); *In re Cantrell,* 44 N.C. App. 718, 263 S.E. 2d 1 (1980). The sole question presented by this appeal, then, is whether these findings of fact sustain the Commission's conclusion that claimant was disqualified from receiving unemployment compensation benefits by virtue of G.S. 96-14, which provides, in pertinent part, as follows:

An individual shall be disqualified for benefits:

. . . .

(2) . . . if it is determined by the Commission that such individual is, at the time such claim is filed, unemployed because he was discharged for misconduct connected with his work.

G.S. 96-14 (Supp. 1979).

In determining whether facts found constitute "misconduct" within the intent of G.S. 96-14(2), this Court has quoted with approval the following definition:

***[T]he term "misconduct" [in connection with one's work] is limited to conduct evincing such wilful or wanton disregard of an employer's interest as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as

to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer.\*\*\*

*In re Collingsworth,* 17 N.C. App. 340, 343-344, 194 S.E. 2d 210, 212-213 (1973), *quoting Boynton Cab Co. v. Neubeck,* 237 Wis. 249, 296 N.W. 636 (1941). This Court also has stated that "where the claimant is discharged because he willingly and knowingly violates a reasonable rule of his employer, the claimant is disqualified" from receiving benefits. *Cantrell,* 44 N.C. App. at 721, 263 S.E. 2d at 3 (violation of employer's policy establishing rotation system for truck drivers by refusing to make trip constituted misconduct). *See also In re Stutts,* 245 N.C. 405, 95 S.E. 2d 919 (1957) (willful violation of employer's rule prohibiting employees from changing the weights on their machines constituted misconduct); *In re Collingsworth,* 17 N.C. App. 340, 194 S.E. 2d 210 (1973) (refusing to follow employer's rule requiring employees to wear ear protective devices constituted misconduct).

The Commission here found as a fact that the employer had adopted a policy "that employees who are involved in fights and use or threaten to use any kind of weapon will be discharged." It also found that "the claimant threatened [a fellow employee] with bodily harm" and that "a co-worker heard the claimant and [the fellow employee] arguing ... [and] observed the claimant pick up a wooden post ...." Finally, it found that claimant was discharged for violation of the employer's policy "which states that employees who are involved in fights and use or threaten to use any kind of weapon will be discharged." On the basis of these findings the Commission concluded that claimant was discharged for "misconduct connected with his work" within the intent of G.S. 96-14(2). The Commission stated, in its Memorandum of Law, that "the claimant chose a course of action which was in complete disregard of the employer's best interest and represented a disregard of standards of behavior which the employer has a right to expect of his employee."

We note that the findings do not support a conclusion that claimant "willingly and knowingly violate[d] a reasonable rule of his employer," *Cantrell,* 44 N.C. App. at 721, 263 S.E. 2d at 3, because the Commission failed to find that claimant had knowl-

edge of the policy he was found to have violated.[1] The definition approved in *Collingsworth*, however, permitted the Commission to find misconduct and thus to deny benefits, not only for "deliberate violations or disregard of standards of behavior which the employer ha[d] the right to expect," but also for "carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer." *Collingsworth*, 17 N.C. App. at 343-344, 194 S.E. 2d at 212-213. The employer here had a substantial interest in the preservation of a peaceful atmosphere in the workplace; in having its employees perform their assigned tasks rather than harass their fellow employees; in not having its employees diverted from their assigned tasks by the harassment of fellow employees; and in not having its employees risk debilitating injuries at the hands of fellow employees. The claimant's actions in (1) threatening a fellow employee with bodily harm, (2) leaving his assigned work area for the avowed purpose of going to another work area to harass a fellow employee, and (3) picking up a wooden post in the course of an argument with the fellow employee, were sufficient to constitute "an intentional and substantial disregard of the employer's interests." They thus constituted "misconduct connected with his work" sufficient to disqualify him from receiving unemployment compensation benefits. We therefore reverse the judgment of the superior court and reinstate the decision of the Employment Security Commission which disqualifies claimant from receiving unemployment compensation benefits. *See Cantrell*, 44 N.C. App. at 723, 263 S.E. 2d at 4.

Reversed.

Judges CLARK and WEBB concur.

---

[1]The following evidence in the record would have supported such a finding:

Q.  .... Mr. Yelverton, were you aware of a policy that if a weapon was used to threaten another employee that the employee doing the threatening would be discharged?

A. Yes.